## THE STATE v. J. B. FENLEY, Appellant.

Division Two, July 14, 1925.

1. **APPELLATE JURISDICTION:** Misdemeanor. Notwithstanding the offense charged is a misdemeanor, the Supreme Court has jurisdiction of an appeal from a judgment of conviction where defendant interposed as a defense that the search warrant, by which a part of the evidence upon which he was convicted was obtained, violated certain specified provisions of the Constitution.

2. **EVIDENCE:** Testimony in a Similar Case. In proving the principal offense, testimony introduced in a similar case in which defendant has been indicted, if limited to the incidental facts and circumstances of the offense of a kindred nature and to their character as related to the principal offense and their nearness in time to its occurrence, is competent.

3. **INDICTMENT:** Misdemeanor. In charging a misdemeanor the same strictness is not required as in cases of felony. If the indictment notifies the defendant of the nature and cause of the complaint it will be given a liberal construction, and will be sufficient, and particularly so where the applicable statute states that "it shall be sufficient to state that the act complained of was then and there prohibited and unlawful" and the indictment so states.

4. ———: ———: Acting Through Agent: Variance. There is no variance in an indictment for a misdemeanor charging that the act of the defendant was committed through his agent, instead of directly by himself. In a misdemeanor case, all the participants in the offense are principals. The proof being that the intoxicating liquor was transported for defendant and in compliance with his order and that he received it at its destination, the averment that the act of transportation was committed by a named agent for defendant, instead of constituting a variance, more fully informed him of the nature and cause of the accusation against him and better enabled him to prepare his defense.

5. **SEARCH WARRANT:** Issued Without Order of Court. A search warrant issued by the clerk of the circuit court without an order of the court, is unauthorized and confers no power on the officer.

6. ———: Premises of Another. An unauthorized search warrant is a nullity, and if directed against the property of defendant and is used by the officer in invading and searching the premises of another, defendant suffers no injury from a use of the contraband thus obtained by the officer as evidence in his trial.

7. **EVIDENCE: Transportation of Liquor: Remote Delivery.** Testimony that certain Jamaica ginger bottles were found stored in a woodshed belonging to another, and removed therefrom, five months after the alleged unlawful transportation of the intoxicating liquor and its receipt by defendant, relates to an occurrence too remote from the offense charged to be admitted as evidence. (See page 520.)

8. ———: ———: **Sale: Intent.** In the trial of a defendant charged with the transportation of intoxicating liquor, testimony of a witness that he bought from defendant some of the liquor soon thereafter is not competent to show the intent with which the offense charged was committed. Criminal intent is not an element of the offense, and where the defendant is bound to know from the indictment the nature and character of his act proof of other offenses is not admissible to show intent.

Corpus Juris-Cyc. References: Courts, 15 C. J., Section 511, p. 1081, n. 60; Section 512, p. 1081, n. 64, 65, p. 1082, n. 66. Criminal Law, 16 C. J., Section 1087, p. 5161, n. 81; Section 1137, p. 590, n. 20; Section 2157, p. 856, n. 23. Indictments and Informations, 31 C. J., Section 180, p. 663, n. 18, 20; Section 252, p. 702, n. 56 New; Section 268, p. 717, n. 30. Intoxicating Liquors, 33 C. J., Section 375, p. 678, n. 35; Section 383, p. 683, n. 14 New; Section 452, p. 730, n. 59; Section 493, p. 753, n. 25; Section 534, p. 780, n. 15. Searches and Seizures, 35 Cyc. p. 1266, n. 15.

Appeal from Callaway Circuit Court.—*Hon. David H. Harris,* Judge.

REVERSED AND REMANDED.

*Nick T. Cave* and *Emil P. Rosenberger* for appellant.

(1) The indictment is fatally defective: (a) Words of a statute which are descriptive of an offense as part of the statutory definition thereof cannot be omitted from an indictment or information thereunder without rendering the same defective. State v. Viviano, 206 S. W. 235; State v. Miller, 132 Mo. 297; State v. Hesseltine, 130 Mo. 468. (b) It fails to follow the language of the statute. Every fact material to the offense charged must be alleged in the indictment, and nothing material can be taken by intendment or implication. State v. Hall, 130 Mo. App. 170. (c) It fails to charge the sale was unlawfully made, as is required in careful criminal plead-

ing. (d) It should have alleged that the defendant transported the alleged liquor and not that the transportation was made by and through an agent, because all participants in the commission of a misdemeanor are principals. State v. McLain, 92 Mo. App. 456; Richardson v. United States, 181 Fed. 5; Bowles v. State, 127 Pac. 888; Loeb v. State, 6 Ga. App. 23. (2) The court should have sustained the defendant's motion to quash the search warrant. Sec. 6595, R. S. 1919, as amended by Laws 1921, p. 413, is unconstitutional in this: Said section is violative of Sections 11 and 30, Article 2, of the Constitution of Missouri, and of the fourth and fifth articles and of Section 1 of Article 14 of the Constitution of the United States of America. Lowry v. Rainwater, 70 Mo. 152; Boyd v. United States, 116 U. S. 616; Gould v. United States, 41 Sup. Ct. Rep. 261; Amos v. United States, 41 Sup. Ct. Rep. 266; Holmes v. United States, 275 Fed. 49; Duke v. United States, 275 Fed. 142; State v. Owens, 259 S. W. 100; State v. Locke, 259 S. W. 116; State v. Tunnell, 259 S. W. 128. (3) After having sustained the motion to return the bottles and containers to defendant, which were seized under the search warrant in question, palpable error was committed by the court in permitting the Sheriff and deputy sheriff to testify what they had found while acting under the search warrant. Authorities supra. (4) The testimony of witness Thompson to the effect that a month afterwards he had bought a dozen bottles of Jamaica ginger from defendant was too remote to throw any light on the issues involved in this prosecution. (5) Excluding the testimony which was erroneously admitted, the State absolutely failed to make out a case. The defendant was charged and convicted of having transported Jamaica ginger through his agent Roberts. The undisputed testimony shows that Roberts was not defendant's agent. At most it might be held that he was defendant's servant. There is a distinction between an "agent" and a "servant." An agent has more or less discretion, while a servant acts under the master's control and direction.

McCrosky v. Hamilton, 108 Ga. 640; Kingan & Co. v. Silvers, 13 Ind. App. 80; Sumner v. Nevin, 4 Cal. App. 347.

*Jesse W. Barrett,* Attorney-General, and *Wm. L. Vandeventer,* Special Assistant Attorney-General, for respondent.

(1) The indictment was sufficient. It was in the words of the statute. State v. Bockstruck, 136 Mo. 335; Sec. 6596, R. S. 1919; State v. Ladd, 216 S. W. 1004; State v. Nash, 283 Mo. 32; State v. Farr, 255 S. W. 1069; State v. Smith, 261 S. W. 696; State v. Brown, 262 S. W. 710. It was not necessary to negative exceptions. Sec. 6596, R. S. 1919. (2) The court did not commit error in overruling the motion to quash the search warrant. The testimony on the motion failed to show the premises belonged to appellant; in fact, the testimony showed that they did not belong to him. Objections to an illegal search warrant can only be raised by the owner or person in possession of the premises. Lakes v. Commonwealth, 254 S. W. (Ky.) 908; Bowling v. Commonwealth, 193 Ky. 642; Lusco v. United States, 287 Fed. 69; United States v. Kaplan, 286 Fed. 963; Jones v. United States, 296 Fed. 632; Chicco v. United States, 284 Fed. 434; Haywood v. United States, 268 Fed. 803. (3) It was error to permit Fletcher Thompson to testify to buying Jamaica ginger from appellant. Evidence of other independent crimes is not admissible. State v. White, 223 S. W. 683; State v. Smith, 261 S. W. 696; State v. Palmer, 281 Mo. 530; State v. Spray, 174 Mo. 569. (4) The evidence was insufficient to support the verdict. (a) There was no proof that Jamaica ginger was actually transported. (b) There was no proof that it was intoxicating. State v. White, 261 S. W. 696; State v. McIntyre, 256 S. W. 141; State v. Craft, 246 S. W. 930; State v. Weagley, 240 S. W. 822; State v. St. Clair, 247 S. W. 203.

WALKER, P. J.—The defendant was indicted by the grand jury of Callaway County at the May term, 1921, of the circuit court, for transporting intoxicating liquor, viz: Jamaica ginger. On May 18, 1921, the prosecuting attorney made affidavit for a search warrant, alleging he believed that in a woodshed back of the Attwood Bakery in Fulton a quantity of intoxicating liquors had been stored on May 14, 1921, by one J. B. Fenley, who, the affiant believes, has been unlawfully selling intoxicating liquors. Upon this affidavit the clerk of the circuit court issued a search warrant, which, after setting forth the material portions of the affidavit as to the place to be searched, its ownership and the belief that the defendant had intoxicating liquor stored therein, directed the sheriff to search the same and produce the liquors found before the judge of the circuit court. Tried to a jury the defendant was convicted and fined $150, from which judgment he appeals.

The defendant filed a motion to quash the search warrant for the reason that it violated the Constitution of the United States and that of the State of Missouri, especially Sections 11 and 30 of Article II of the latter, and asked that the testimony procured thereby be suppressed. Evidence was introduced on the motion showing that no record had been made of the filing of the application for the search warrant and that the same had been issued by the clerk of the circuit court. The sheriff testified that he searched the woodshed described in the search warrant; that the store of the defendant is not situated on the same lot or block with the Attwood Bakery, but is across the street; that upon searching the woodshed he found several boxes and barrels of empty Jamaica ginger bottles; that he brought the bottles before the grand jury and that he didn't know under whose control the shed was. This was all the testimony on the motion except that the indictment and the motion to quash were introduced in evidence.

The evidence for the State tended to show that Walter Roberts was working for appellant in his grocery

store in Fulton; that during Christmas week, 1920, Roberts, his wife and two others, went to St. Louis to do some Christmas shopping; that appellant asked Roberts to go to the O'Keefe grocery in St. Louis and get a package for him; that the next morning after they reached St. Louis Roberts went to the O'Keefe grocery and got the package, which was a large paper box, open at the top, and in which were several sealed cartons bearing the label "Sunday Girl Jamaica Ginger." This package was brought to Fulton by Roberts and delivered to appellant at about eleven o'clock Monday night. No witness testified as to the contents of the cartons save as indicated by the labels.

Mrs. Roberts testified that a short time before the grand jury met in May the appellant came to her and told her he had come to put a bug in her ear, that: "People who went before the grand jury and didn't know what to say were a blowed up cookie." She also testified that the label on the cartons stated that the contents were ninety per cent alcohol.

The State offered Fletcher Thompson as a witness, who testified that sometime during the preceeding winter (1920) he bought a carton of Jamaica ginger from appellant for which he gave him eight dollars. He did not remember the brand of Jamaica ginger, and did not tell Fenley what he wanted with it. Witness testified that he bought it to drink and did drink it; that on or about that time Jamaica ginger was used in that community as a beverage. The check with which witness paid for the Jamaica ginger was offered in evidence. On cross-examination witness testified that he went to appellant's place of business with a man named Harry Reid; that the latter went in and had a talk with Fenley before the transaction; that there wasn't any name or label on the carton; that he didn't know what amount of alcohol it contained, but that it had an effect on him different to alcohol and whiskey. It would merely burn him, and that was all the effect it had except it gave him a sleepy feeling.

A boy, named Fletcher, who had been employed by the defendant as a truck driver, testifying for the State, said that he had helped move a barrel and two or three boxes of empty Jamaica ginger bottles from defendant's store to the shed back of Attwood's Bakery, owned and controlled by the defendant; that defendant was in the store at the time and that the bottles were sitting at the head of the stairs; that the defendant had been in the habit of buying bottles of all descriptions from boys; that the bottles in question were moved across the main street in broad daylight just before noon.

Bishop, the sheriff, testified that under the search warrant he searched the woodshed described therein, and found the bottles which were taken by him and later presented to the grand jury; that he didn't know who owned the shed; that the defendant was not present at the time the search was made, but came later when they were hauling the bottles away.

Maddox, a deputy sheriff, testified that he went with the sheriff to search the woodshed, and that after the search was made and the sheriff had gone to get a truck to haul the bottles away defendant appeared and told them that he had bought some of the bottles seized, put new labels on them and refilled them himself.

Pollard, a registered druggist, testified that the commercial commodity known as Jamaica ginger contained from sixty-five to ninety-five per cent of alcohol, depending on the manufacture, but on cross-examination admitted that he did not know anything about the special brand of Jamaica ginger known as "Sunday Girl," and that he had never heard of it.

The indictment is as follows: "The Grand Jurors for the State of Missouri, impaneled, sworn and charged to inquire within and for the body of the County of Callaway, and State aforesaid, upon their oath present and charge that J. B. Fenley on or about the 20th day of December, 1920, at the County of Callaway and State of Missouri, did then and there transport intoxicating liquors by and through his agent Walter Roberts, to-wit:

One gross of two ounce bottles, containing Jamaica gin-
ger, the said ginger containing more than one-half of one
per cent alcohol, from St. Louis, Missouri, to Fulton,
Missouri, *for beverage purposes,* which act was then and
there unlawful; by the laws of the State of Missouri in
such cases made and provided; against the peace and
dignity of the State."

The offense charged is a misdemeanor. The juris-
diction of this court is due to the defensive interposition
of a constitutional question.

I.  The defendant was charged in another proceed-
ing with having sold intoxicating liquors. The material
portions of the testimony in that and the instant case are
the same.  In the other proceeding it was sought, in ad-
dition to the introduction of evidence to prove a
sale, to supplement or add thereto by the offer-
ing and admission of testimony of the finding
by the sheriff, under the authority of a search warrant,
of a large number of empty bottles—not on the premises
of the defendant—but which property while being re-
moved was claimed by him.  Also by the offering and
admission in evidence of the transportation from St.
Louis of some cartons labeled "Jamaica Ginger" to the
defendant's place of business in Fulton.  In the instant
case, after showing the fact last stated, the testimony
introduced in the other case was likewise admitted in
this.  This manner of proving the commission by a de-
fendant of two or more offenses of a kindred nature is
not subject to serious objection when properly limited.
This limitation is not confined to the volume of the tes-
timony offered as to the incidental facts and circum-
stances, but as to their character as related to the prin-
cipal offense, and their nearness in time to its occurrence.
If dissimilar in character or remote in time from the of-
fense charged they are not properly admitted in evidence.

II.  The validity of the indictment is challenged. In
charging a misdemeanor, as at bar, the same strictness
is not required as in cases of felony.  [State v. Nash, 283

Mo. l. c. 34; State ex rel. Zehnder v. Robertson, 262 Mo. l. c. 621; State v. Ladd, 216 S. W. (Mo.) 1004.] Within **Indictment.** reasonable bounds therefore—by which we mean that enough must appear in the charge to notify the defendant of the nature and cause of the complaint—a more liberal, construction may be given to an indictment for a misdemeanor to determine its sufficiency, than to one charging a graver offense.

This rule is especially applicable where the charge, as here, is under a statute (Art. VII, Chap. 92, R. S. 1919) which provides, among other things, that: "It shall not be necessary in any affidavit, information or indictment to give the name of the purchaser or to include any defensive negative averments, but it shall be sufficient to state that the act complained of was then and there prohibited and unlawful." [Sec. 6596, R. S. 1919.]

This rule of interpretation which may also be termed a special Statute of Jeofails, simplifies the question as to the sufficiency of this indictment. Charging as it does, a statutory offense, we find that it is drawn in the language of the law of its creation which sets forth all of the constituent elements of the crime. [Sec. 6588, R. S. 1919, as amended, Laws 1921, p. 414; State v. Perkins, 240 S. W. (Mo. App.) 851; State v. Bersch, 276 Mo. l. c. 412.]

However, further objection is urged to the indictment in that it charges the act of the defendant to have been through an agent, instead of directly by the defendant. This contention cannot form the basis for a charge of variance. In a misdemeanor case all the participants in the offense are principals. [Cooley v. Commonwealth, 243 S. W. (Ky.) 915; State v. Sheehan, 190 Pac. (Ida.) 71.] While the defendant did not participate in the physical transportation of the liquor it was shown that it was transported for him and in compliance with his order and that he received it at its destination. Under such a state of facts the proof would have sustained the charge had it been made directly against the defendant. This being true,

the averment that the act was committed by an agent for the defendant, instead of constituting a variance and hence a ground of complaint, more fully informed the de- fendant of the nature and cause of the accusation against him and better enabled him to prepare his defense. It is elementary that the material facts which constitute the offense charged must be stated in an indictment and they must be proved by the evidence. Only as incidental to and explanatory of the main charge as to the defend- ant's guilty connection with this transaction, was it nec- essary to offer any proof in regard thereto. That the prosecuting attorney, out of the abundance of caution, deemed it necessary to thus charge the offense and de- nominate Roberts as the defendant's agent, instead of directly averring the act as that of the defendant, will not vitiate the indictment because the unnecessary aver- ment was not descriptive of the identity of the legal es- sentials of the charge in the indictment. The transpor- tation by another having been shown as incidental the essentials to establish the offense were the defendant's order for and his approval of the act by his receiving the liquor when it reached its destination. [State v. Shee- han, 190 Pac. (Ida.) 71; Benson v. State, 254 S. W. (Tex. Cr. App.) 793.]

III. It is further contended that the trial court erred in not sustaining the motion to quash the search warrant and in permitting the sheriff to testify to the result of the search made thereunder. The search warrant hav- ing been issued by the clerk of the circuit court
<span style="margin-left:2em">Search Warrant.</span> without an order of that court was unauthorized and conferred no power on the officer. The stat- ute (Sec. 6595, R. S. 1919, as amended, Laws 1921, p. 416) under which application was made for the warrant by the prosecuting attorney, conferred no authority for its issuance upon the circuit clerk, and we held in State v. Hyde, 297 Mo. l. c. 217, that a writ thus issued was a nullity. In addition, it was not directed against the prop- erty of the defendant and furnished no ground of com-

plaint based on a violation of his constitutional rights. [Jones v. United States, 296 Fed. 632; Lakes v. Commonwealth, 254 S. W. (Ky.) 908; Bowling v. Commonwealth, 193 Ky. 642, 237 S. W. 381; United States v. Kaplan, 286 Fed. 963; Chicco v. United States, 284 Fed. 1. c. 436; Haywood v. United States, 268 Fed. (C. C. A.) 1. c. 803.]

The defendant having suffered no injury within the meaning of the Constitution in having the premises of another invaded under the seeming authority of a search warrant, has no ground of complaint and the court did not commit error in overruling the motion to quash the writ.

IV. The further objection was made to the testimony in regard to the removal of the bottles to and from the shed of the Baking Company, that it was too remote from the offense charged. The date of the latter was in December, 1920, and the finding of the bottles in the shed and their removal therefrom was in Remote Occurrences. May, 1921, or more than five months after the alleged unlawful transportation of the liquor and its receipt by the defendant. It is not deemed necessary to discuss this question which we have more fully considered in the companion case against this defendant, reported at page 520 of this Report, in which he is charged with the unlawful sale of liquor, than to say, as we have said in deducing the rule from the cases there cited, that the time which had elapsed between the occurrence of the evidentiary and the principal facts was sufficiently remote to render the former unworthy of admission in evidence to prove the latter. [State v. Sebastian, 81 Conn. 4.]

V. The testimony of Fletcher Thompson, who bought Jamaica ginger from the defendant in January, 1921, was objected to on the ground that it had relation to and only tended to prove a separate and distinct offense than that for which the defendant was on trial. The attitude of the State in answer to the objection to this testimony was that it tended to prove the purpose for which

the liquor was transported, or more directly that its purpose was to show the intent with which the offense charged was committed. The trial court evidently entertained a like view of the purpose of the testimony and therefore overruled the defendant's objection thereto. That there are many offenses which admit of the proof of other crimes it may be admitted; also that there is a tendency on the part of the trial courts to rule more liberally in the admission of this character of testimony. This latitude is recognized in the latest and most comprehensive treaties on criminal evidence (Underhill Cr. Ev. (3 Ed.) p. 200), and the correctness of the author's conclusions are demonstrated by the citation of many authorities. Where, however, the facts are such that the defendant was bound to know the nature and character of his act, as he was in this case, proof of other offenses is not admissible to show intent. The St. Louis Court of Appeals, in a case (State v. Seidler, 267 S. W. 424) in which the defendant was charged with the unlawful possession and sale of intoxicating liquor, held that in violations of the prohibition law criminal intent is not, as a rule, a necessary element and need not be shown. In an earlier case (State v. Stike, 149 Mo. App. 104) in which the defendant was charged with selling liquor to a minor, testimony of other and distinct sales were held to be properly excluded. The admission of the testimony of this witness was therefore unauthorized.

The guilt of the defendant is not a matter of much doubt from the evidence adduced. [State v. Bennett, 270 S. W. (Mo.) 295.] It is to be regretted, therefore, that the errors noted will necessitate a reversal and a remanding of this case that it may be tried as here indicated. It is so ordered. All concur.